UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATALYST SECURITIES, LLC,

                       Petitioner,

-against-

MARKER THERAPEUTICS, INC.,

                       Respondent

21-CV-08005-LTS

---

## MEMORANDUM ORDER

In this removed action, petitioner Katalyst Securities, LLC ("Katalyst", or the "Petitioner") seeks confirmation of an arbitration award (the "Award") rendered by a panel of Financial Industry Regulatory Authority ("FINRA") arbitrators (the "Panel") against respondent Marker Therapeutics ("Marker", or the "Respondent"), on August 16, 2021, as well as pre-judgment and post-judgment interest and costs (docket entry no. 1, Ex. A (the "Petition") at 4-5.) Marker's motion to vacate the award (docket entry no. 12, "Resp. Mem.") is now before the Court. Marker argues that the panel of arbitrators lacked jurisdiction to arbitrate the dispute between the two parties and, in the alternative, that the FINRA panel's award demonstrated a manifest disregard of the applicable law. (Resp. Mem.) Katalyst opposes the motion and requests the entry of judgment granting its petition. The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332 and 28 U.S.C. section 1441.

The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Katalyst's Petition to confirm the Award is granted. Marker's motion to vacate the Award is denied.

BACKGROUND

This dispute arises from a contract (Docket entry no. 13, Ex. 2 (the "Agreement")) entered into between Petitioner Katalyst, a registered broker-dealer and FINRA member (Agreement at 1) and Marker, a publicly traded immune-oncology company[1] (together, the "Parties"). (Id.) Under the terms of the Agreement, Marker appointed Katalyst "to assist the Company in finding qualified subscribers" for the private placement of Marker's securities in exchange for a fee to be paid in cash and in warrants to purchase shares in Marker's stock. (Agreement at 1 & ¶ 3(a-b).) The Agreement also contained a clause providing that Katalyst would be entitled to an additional fee should any investor "introduced" by Katalyst to Marker "consummate" financing for Marker during a one-year "tail period" following the 2017 private placement. (Agreement ¶ 3(c).)

The Agreement contained a two-stage dispute resolution mechanism. In the event of a dispute, the Parties agreed to first "submit the matter for resolution to a mediator, acceptable to all parties." (Agreement ¶ 13.) If mediation failed, the parties agreed that "the matter will be resolved by arbitration." (Id.) As to arbitration, the Agreement provided as follows:

> The parties hereto agree to submit all controversies to the exclusive jurisdiction of FINRA arbitration in accordance with the provisions set forth below and understand that . . . arbitration is final and binding on all parties . . . and all controversies which may arise between the parties concerning this agreement shall be determined by arbitration pursuant to the rules then pertaining to FINRA.

(Agreement ¶ 13, the "Arbitration Clause".) The Arbitration Clause also included a choice of law provision, stating that "[a]ll questions concerning the construction, validity,

---

[1] The parties to the Agreement are Katalyst and TapImmune Inc., Marker's predecessor-in-interest. (Docket entry no. 12 ("Resp. Mem.") at 3 n. 1.) For purposes of clarity, and consonant with the usage of the Parties, the Court will refer to the Respondent only as Marker.

enforcement, and interpretation of this agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York." (Id.)

A controversy subsequently arose when Katalyst claimed that Marker had obtained financing during the "tail period" from investors that Katalyst had "introduced," as defined by the Agreement, to Marker. (Resp. Mem. at 2.) Marker denied any contractual obligation to compensate Katalyst in connection with that later financing, and the matter was referred to mediation as required under the Agreement's terms. (Docket entry no. 15 (the "Oppenheimer Decl."), Ex. 3 at 16.) Mediation failed to resolve the dispute, and on May 20, 2019, Katalyst submitted a Statement of Claim to FINRA for arbitration. (Oppenheimer Decl., Ex. 2.) During the arbitration process, Marker "repeatedly objected" to FINRA's assertion of jurisdiction over the dispute, despite the terms of the Arbitration Clause. (Resp. Mem. at 5.) Each time, Marker's objection was overruled. (See docket entry no. 13 (the "Kuwana Decl."), at Ex. 4.) (Containing an e-mail from the Panel to the Parties, stating "The Panel has determined that FINRA has jurisdiction over this matter pursuant to the terms of the parties' agreement.") On August 16, 2021, FINRA issued a decision, awarding Katalyst $1,798,501.00 in compensatory damages, $450,000.00 in attorney's fees, and pre-award interest. (Kuwana Decl., Ex. 3. (the "Award"). Katalyst subsequently filed the Petition in the Supreme Court of New York, New York County, seeking confirmation of the Award, and Marker removed the action to this Court.

DISCUSSION

Jurisdiction

"Arbitration is a matter of contract between the parties; it is a way to resolve disputes – but only those disputes – that the parties have agreed to submit to arbitration." DDK Hotels, LLC v. Williams-Sonoma, Inc., 6 F.4th 308, 316 (2d Cir. 2021) (quotation and citation omitted). "Just as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract." Metro Life Ins. Co. v. Bucsek, 919 F.3d 184, 189-90 (2d Cir. 2019). "[T]he question of who decides arbitrability is itself a question of contract." Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 527 (2019). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Id. at 528. "In determining whether the arbitrability of a dispute is to be resolved by the court or the arbitrator, the arbitration agreement is determinative." DDK Hotels, 6 F.4th at 318 (citing First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920 (1995)).

In reviewing an arbitration agreement, "[c]ourts should not assume that parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." First Options, 115 S. Ct. at 1924 (internal quotation omitted). "Rarely, however, do arbitration agreements directly state whether the arbitrator or the court will decide the issue of arbitrability." DDK Hotels, 6 F.4th at 318 (internal modifications and quotation omitted). "In the absence of such clear language, 'courts must look to other provisions of the agreements to see what contractual intention can be discerned from them.'" Id. (quoting Bucsek, 919 F.3d at 191.) If the

parties "clearly and unmistakably agreed to have" the issue of arbitration resolved by the arbitrator, "it is the obligation of the court to enforce their agreement." Bucsek, 919 F.3d at 191.

Courts in the Second Circuit have repeatedly "found the clear and unmistakable provision [standard] satisfied where a broad arbitration clause expressly commits all disputes to arbitration, concluding that *all* disputes necessarily includes disputes as to arbitrability," NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010, 1031 (2d Cir. 2014) (internal quotation and citation omitted) (emphasis in original); see also Wells Fargo Advisors, LLC v. Sappington, 884 F.3d 392, 396 n. 3 (2d Cir. 2018) ("[A] referral of 'any and all' controversies to arbitration suffices to reflect such a broad grant of power to the arbitrators as to evidence the parties' clear intent to arbitrate issues of arbitrability."); see also Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 43, 46 (1997) (holding that an agreement stating that "[a]ny controversy . . . shall be settled by arbitration" and containing a choice of law provision stating that the agreement "shall be governed by the laws of the State of New York'" clearly and unmistakably authorizes the arbitrator to determine arbitrability); but see DDK Hotels, 6 F.4th 318-19 (2d Cir. 2021) (holding that a broad grant of authority to the arbitrator constitutes such clear and unmistakable evidence of intent when coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability). Here, the Arbitration Clause delegates resolution of "all disputes" to the "exclusive jurisdiction" of FINRA Arbitration. The Court finds that "the meaning of this provision is plain indeed: any and all controversies are to be determined by arbitration. The wording is inclusive, categorical, unconditional, and unlimited." PaineWebber v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996). The Court finds that the Arbitration Clause itself thus provides clear and unmistakable evidence of the Parties' intent to delegate the question of arbitrability to the arbitrator.

Having so found, the Court is bound to defer to the Panel's determination that the dispute was amenable to arbitration.  The record demonstrates that Marker repeatedly brought that question before the Panel, and that the Panel decided that FINRA did have jurisdiction over the dispute.  (Docket entry no. 15 ("Oppenheim Decl."), Ex. 8 (in which the Panel notifies both Parties that "[t]he Panel has determined that FINRA has jurisdiction over this matter pursuant to the terms of the parties' agreement.").)  Because the Court is bound by this determination, Marker's motion to vacate the Award on the basis of lack of jurisdiction is denied.

Manifest Disregard for the Law

"The showing required to avoid summary confirmation of an arbitration award is a lofty one, and the party moving to vacate the award bears a heavy burden of proof."  Manios v. Zachariou, No. 14-CV-331-LTS, 2015 WL 1455696, at *2 (S.D.N.Y. Mar. 31, 2015) (citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997)).  "The review of arbitration awards is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia, 11 F.4th 144, 160 (2d Cir. 2021) (internal modifications and quotation omitted).  In furtherance of these goals, "it is well established that courts must grant an arbitrator's decision great deference."  Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).  "With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract."  T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010).

Against this exacting standard, a litigant may seek vacatur based on alleged "manifest disregard" of the law.  The "manifest disregard" exception is an exceedingly narrow

one. "[W]e have . . . described it 'as a doctrine of last resort – its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the [Federal Arbitration Act] apply.'" Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) (quoting Duferco, 333 F.3d at 389). "Mere error in the law or failure on the part of the arbitrator to understand or apply the law is not sufficient to establish manifest disregard of the law." Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997). For an award to be deemed issued in manifest disregard of the law,

> [t]he error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term disregard implies that the arbitrator appreciates the existence of a governing principle but decides to ignore or pay no attention to it.

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1996). In evaluating claims of manifest disregard of the law, the Second Circuit follows a three-part test: (1) the law allegedly ignored must have been clear and explicitly applicable to the matter before the arbitrators; (2) disregard of the law must have led to an erroneous outcome; and (3) the arbitrators must have known of the law's existence and its applicability to the case, and must have disregarded it intentionally. See T.Co. Metals 592 F.3d at 339 (2d Cir. 2010).

Applying this standard, the Court finds that Marker's argument falls well short. Marker argues that the Panel exhibited manifest disregard for the law by misinterpreting the contractual term "consummate," resulting in an incorrect determination of the duration of the "tail period" during which Katalyst was, under specified circumstances, entitled to additional fees from Marker. (Pl. Mem. at 11.) Having relied on this interpretation in deciding in Katalyst's favor, the Panel, Marker theorizes, "manifestly disregarded the parties' contract and

New York contract law." (Id. at 12.)  Regarding the first factor, Marker fails entirely to support its argument that the Panel's interpretation ignored clear and explicitly applicable law, asserting instead, without citation, that "[t]he parade of dictionary definitions and case law that Marker provided to the FINRA Panel left no doubt" that Marker's proposed interpretation was correct. (Reply at 10.)  Nor does Marker offer any evidence of subjective intent, on the part of the Panel, to disregard the law, as required under test's third factor.  See T.Co Metals, 592 F.3d at 339, infra at 8 ("[T]he arbitrators must have known of the law's existence and applicability to the case, and must have disregarded it intentionally").

On the contrary, Marker asks the Court to find manifest disregard for the law in the Panel's resolution of a straightforward dispute over contractual interpretation, which is precisely the sort of Panel determination to which the Court is required to defer.  "Even if a court . . . were to disagree with the arbitrator's findings of fact, or had a difference of opinion about the correct interpretation of the contract, an arbitration award would still be subject to confirmation." Trustees of New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman, Retraining, Educational and Industry Fund et al. v. Windham Construction Corp., No. 17-CV-4630-VSB, 2017 WL 9472944, at *1 (S.D.N.Y. Dec. 27, 2017), report and recommendation adopted, 2018 WL 2338790 (S.D.N.Y. May 22, 2018). The Court therefore finds that Marker has failed to make the showings necessary to warrant vacatur on the basis of the doctrine of manifest disregard for the law, and Marker's motion is therefore denied in its entirety.

Confirmation of the Award

Respondent Marker having failed to identify any proper basis for vacatur of the Award and Petitioner having established that confirmation of the Award is warranted, the Court

hereby confirms the arbitration award at issue in this action and will direct the entry of judgment in favor of Katalyst in the amount found by the Panel: $1,798,501.00 in compensatory damages and $450,000.00 in attorneys' fees, plus a total of $154,433.26 in interest accrued at a rate of 3% per annum on: (1) the amount of $234,751.00 from May 14, 2018, to August 16, 2021, the date of the Award, and (2) the amount of $1,563,750.00 from October 17, 2018, through the date of the Award.  (Award at 2.)  The Court also awards Katalyst pre-judgment interest pursuant to NY CPLR section 5001 from the date of the Award, as requested in the Petition.  (Petition at 4.) "Post-award, pre-judgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest."  In re Arbitration Between Westchester Ins. Co. v. Massmont Ins. Agency, Inc., 420 F.Supp.2d 223, 226 (S.D.N.Y. Nov. 22, 2005) (citing In re Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd., 73 F.2d 150, 153-154 (2d Cir. 1984)).  "In diversity actions, interest is to be calculated according to the statutory rate prescribed by the law governing the contract . . . even where, as here, federal law governs enforcement of the arbitration award."  Id.  Here, pursuant to the Arbitration Clause's choice of law provision, (Arbitration Clause), the rate of prejudgment interest is governed by New York law, and is therefore set at nine percent. "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."  NY CPLR § 5004 (McKinney's 2022).

        The Court also grants Petitioners' request for an award of post-judgment interest, but only to the extent that interest shall accrue at the rate specified in 28 U.S.C. section 1961. See 28 U.S.C. § 1961(a) (Westlaw current through P.L. 117-80) ("[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court").  "[U]nder [28 U.S.C.] § 1961, federal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions, even when those judgments have been docketed in state court."  Capiello v.

ICD Publications, Inc., 720 F.3d 109, 112 (2d Cir. 2013).  Accordingly, the post-judgment interest rate shall be calculated according to 28 U.S.C. section 1961(a), rather than CPLR section 5004, as requested the Petition.  (Petition at 4.)  Therefore, the Court awards post-judgment interest at the above-mentioned statutory rate from the date on which judgment is entered until the date payment is made.  The Court also grants Katalyst's request for costs in accordance with Fed. R. Civ. P. 54(d).

## CONCLUSION

For the reasons discussed above, Petitioner Katalyst's petition to confirm the arbitration award is granted, and Respondent Marker's motion to vacate the arbitration award is denied.  The Clerk of Court is respectfully directed to enter judgment for Petitioner in the total amount of $2,524,397.87 ($2,402,934.00 arbitration award plus $121,463.37 pre-judgment interest thereon at the annual rate of 9% from August 16, 2021, through the date of this Memorandum Order).  Post-judgment interest will accrue in accordance with 28 U.S.C. section 1961.  This resolves docket entry no. 11.  The Clerk of Court is respectfully directed to close this case following entry of judgment.

SO ORDERED.

Dated: New York, New York
      March 9, 2021

  /s/ Laura Taylor Swain  
LAURA TAYLOR SWAIN  
Chief United States District Judge