UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATALYST SECURITIES, LLC,

Petitioner,

-against-

MARKER THERAPEUTICS, INC.,

Respondent

21-cv-08005-LTS

**MEMORANDUM ORDER**

Petitioner Katalyst Securities, LLC ("Petitioner" or "Katalyst") has moved the Court for an award of attorneys' fees and costs incurred in relation to its petition (the "Petition") to confirm the arbitration award (the "Award") rendered by a panel of Financial Industry Regulatory Authority ("FINRA") arbitrators against respondent Marker Therapeutics, Inc. ("Marker" or "Respondent"), and in its defense against Marker's motion to vacate the same (the "Motion to Vacate"), following the Court's issuance of a March 9, 2022, Memorandum Order (the "Order") granting the Petition and denying the Motion to Vacate. Katalyst now requests attorneys' fees and costs in the amount of $114,093.75.

The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. sections 1332 and 1441. The Court has reviewed thoroughly the parties' submissions and, for the following reasons, Katalyst's application for attorneys' fees and costs is granted in its entirety.

BACKGROUND

Familiarity with the general context and procedural history of this case is assumed for the purposes of this Memorandum Order. Here, the Court will provide an overview of the facts relevant to the instant motion practice.

On August 16, 2021, FINRA issued a decision in an arbitration dispute between Marker and Katalyst, awarding Katalyst $1,798,501.00 in compensatory damages, $450,000.00 in attorney's fees, and $154,433.26 in pre-award interest, totaling $2,402,397.87. (See docket entry no. 13 (the "Kuwana Decl.") at Ex. 3 (the "Award").) Included in the contractual agreement underlying the arbitration dispute was the following provision:

> THE PARTIES AGREE THAT THE DETERMINATION OF THE ARBITRATORS SHALL BE BINDING AND CONCLUSIVE UPON THEM. THE PREVAILING PARTY, AS DETERMINED BY SUCH ARBITRATORS, IN A LEGAL PROCEEDING SHALL BE ENTITLED TO COLLECT ANY COSTS, DISBURSEMENTS AND REASONABLE ATTORNEY'S FEES FROM THE OTHER PARTY.

(Docket entry no. 23-3 (the "Agreement") at 21-22.) On September 7, 2021, Katalyst notified Marker that, should litigation be required to confirm the award, it intended to "seek 'fees on fees,'" or attorneys' fees related to future litigation. (See docket entry no. 26-1 at 1.) Katalyst subsequently filed the Petition in the Supreme Court of New York, New York County, seeking confirmation of the Award, and Marker removed the action to this Court.

On March 9, 2022, following Marker's removal of the Petition to federal court, the Court decided in Katalyst's favor, confirming the award and granting Katalyst $121,463.37 in additional prejudgment interest to the date of judgment pursuant to N.Y. C.P.L.R. 5001, as well as post-judgment interest pursuant to 28 U.S.C. section 1961. (Order at 10.) Katalyst did not request, and the Court did not award, attorneys' fees related to litigation conducted subsequent to FINRA's issuance of the Award. (Id.) Judgment was entered by the Clerk of Court that same day for a total amount of $2,524,397.87. (Docket entry no. 19.)

Marker represents that, "[u]pon receipt of the Court's order and Judgment, Marker began the process of seeking the required approval of its Board of Directors to pay the judgment amount to Katalyst." (Docket entry no. 25-1 ("Kuwana Decl.") ¶ 6).) However, there is no

indication in the record that Marker informed Katalyst that it had commenced this process. (See id.) On March 21, Katalyst sent to Marker courtesy copies "of restraining notices and post-judgment discovery demands made on [Marker] and certain third parties determined to have property in which [Katalyst] had an interest." (Docket entry no. 21 ("Oppenheim Decl.") ¶ 6; see also docket entry no. 21-4 ("Restraining Notices").) The restraining notices were served on "Marker's bank, Wells Fargo, as well as other entities with which Marker does business." (Oppenheim Decl. ¶ 7.) On March 23, 2022, Marker informed Katalyst that it had received "board approval for payment" and that it "plans to pay Katalyst," and requested wire instructions, as well as the removal of the restraining notices. (Oppenheim Decl. at Ex. 5.) Two hours later, Katalyst provided the requested wire information, as well as an attached "summary of costs incurred since August 16" amounting to $114,093.75, which Katalyst demanded Marker pay in addition to the amount ordered by the Court. (Id.) Katalyst promised to withdraw the restraining notices once it had received a payment inclusive of this amount, totaling $2,638,491.61.[1] On March 24, Marker sent Katalyst a payment via wire in the amount of $2,525,456.04. (Oppenheim Decl. ¶ 10.) In a contemporaneous email, Marker notified Katalyst that it had sent a payment "for the amount ordered by the Court in its March 9, 2022 order as well as the post judgment interest that has accrued on that amount" and requested immediate removal of the restraining orders, which Marker stated were "impeding its ability to do business." (Oppenheim Decl. at Ex. 6.) On March 25, 2022, sixteen days after the entry of judgment, Katalyst filed the instant motion for an award of the outstanding attorneys' fees and costs. (See docket entry no. 20 (the "Motion").)

---

[1]   Katalyst's email erroneously indicated a total amount owed of $2,683,491.62. (Oppenheim Decl., Ex. 5 at 2.) The total amount requested by Katalyst, inclusive of post-Award attorney's fees, is $2,638,491.62.

DISCUSSION

In opposing Katalyst's motion, Marker proffers three arguments: (1) that Katalyst's motion should be denied as untimely; (2) that the Agreement does not provide for attorneys' fees in connection with post-arbitration proceedings; and (3) that, even if the Court does award attorneys' fees in some amount, a portion of Katalyst's requested fees is unreasonable. The Court considers each of these arguments in turn.

Timeliness

Federal Rule of Civil Procedure 54(d)(2)(B) ("Rule 54") provides that, "[u]nless a statute or a court order provides otherwise, [a] motion [for attorneys' fees] must be filed no later than 14 days after the entry of judgment . . .." Fed. R. Civ. P. 54(d)(2)(B)(i). The judgment in this case was entered on March 9, 2022. Katalyst's deadline to move for attorneys' fees thus was March 23, 2022. The Motion was not filed until March 25, 2022.

In the Second Circuit, however, courts have discretion to entertain motions filed after the 14-day deadline. "[B]y its very terms, the fourteen-day deadline of Rule 54 is not a fatal jurisdictional deadline." Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 227 (2d Cir. 2004) (citations omitted). Instead, the Second Circuit holds that the district court "may extend certain deadlines [including that imposed by Rule 54] 'upon motion made after the specified period where the failure to act was the result of excusable neglect.'" Id. at 226 (quoting Fed. R. Civ. P. 6(b)(2)) (cleaned up).

In determining whether a party's neglect is excusable, courts are directed to consider the following factors: "(1) the danger of prejudice to the opposing party[;] (2) the length

of the delay and its potential impact on judicial proceedings[;] (3) the reason for the delay, including whether it was in the reasonable control of the movant[;] and (4) whether the movant acted in good faith." Tancredi, 378 F.3d at 227.  This determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395 (1993).

Application of this standard is informed by Congress' purposes in adding the 14-day deadline to Rule 54:

> The Rule 54 deadline serves important purposes. Rule 4(a)(1) of the Federal Rules of Appellate Procedure requires that a notice of appeal be filed within 30 days of the entry of judgment if a party is to appeal. This deadline leaves non-prevailing parties more than two weeks between the filing of any motion for fees and expenses and the due date of their notice to appeal. During this time, such parties are able to decide whether to appeal with a full and accurate understanding of the amounts at stake. A defendant who believes there are reasonable grounds to appeal may elect to forgo that appeal where, as here, the size of the award is small and no motion for fees has been filed within the prescribed time. A defendant who decides not to appeal under these circumstances, only to discover that a substantial claim for fees was planned all along, has been unfairly misled.

Cardona v. City of New York, No. 04-CV-955-GEL, 2007 WL 690126, at *1 (S.D.N.Y. Mar. 7, 2007); see also Tancredi, 378 F.3d at 227 (quoting Fed. R. Civ. P. 54 Advisory Comm. Notes, 1993 Amendments).

Regarding the first factor, the Court finds that Marker will suffer no prejudice if the delay is excused.  Marker has known since at least September 7, 2021, that Katalyst planned to seek attorneys' fees and costs related to additional litigation, ameliorating concerns that Katalyst's delay prejudiced Marker's ability to make an informed decision of whether to appeal. See Bienenfeld v. Bosco, Bisignano & Mascolo, 531 F. Appx. 158, 159 (2d Cir. 2013) (summary order) (finding no prejudice where non-movant was given notice early in litigation that movant sought attorneys' fees).  Indeed, Marker proffers no claim of prejudice resulting from Katalyst's

two-day delay.  See Blissett v. Casey, 969 F. Supp. 118, 123 (N.D.N.Y. 1997) (finding this factor to weigh in favor of a finding of excusable neglect where "defendants make absolutely no mention of potential prejudice").  Therefore, "in keeping with one of the purposes of the fourteen-day filing requirement for attorney's fee motions, which 'is to assure that the opposing party is informed of the [fee] claim before the time for appeal is lapsed,'" id. at 123-24 (quoting Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 Amendments), the Court finds that the first factor weighs in favor of a finding of excusable neglect.

    The second factor also weighs in Katalyst's favor.  Katalyst's delay in filing was only two days, far short of that required to frustrate the purpose of the 14-day rule.  Katalyst notes correctly that delays resulting in findings of non-excusable neglect (including in all cases cited by Marker in support of its position) are generally far longer than that considered here.  See, e.g., U.S. ex rel. Pervez v. North Shore-Long Island Jewish Health Sys., No. 06-CV-1114-DLC, 2011 WL 2683197 (S.D.N.Y. Jul. 11, 2011) (145-day delay); Fire & Cas. Ins. Co. of Connecticut v. 2207 7th Ave Restaurant Corp., No. 04-CV-4739-HB, 2005 WL 2482548, at *1-2 (S.D.N.Y. Oct. 6, 2005) (seven-month delay); Mahmud v. Kaufmann, No. 05-CV-08080-DAB-JLC, 2010 WL 2079556, at *2 (S.D.N.Y. Apr. 15, 2010) (sixteen-day delay), report and recommendation adopted, 2010 WL 2079558 (S.D.N.Y. May 21, 2010).  This stands in contrast to decisions regarding shorter delays, especially when the non-movant made no plausible claim of prejudice.  See, e.g., Diaz v. Paragon Motors of Woodside, Inc., No. 03-CV-6466-CPS-RML, 2008 WL 2004001, at *4 (E.D.N.Y. May 7, 2008) (permitting motion filed following "minimal, two-day delay"); ComLab, Corp. v. Kal Tire, No. 17-CV-1907-PKC-OTW, 2019 WL 2144307, at *3 (S.D.N.Y. Apr. 18, 2019), report and recommendation adopted, 2019 WL 2137135 (S.D.N.Y. May 16, 2019), aff'd sub nom., 815 F. App'x 597 (2d Cir. 2020) (summary order)

(permitting 23-day delay where opposing party "had ample notice" that movant would be seeking attorneys' fees).

The third factor weighs in favor of Marker. Katalyst's stated reason for the delay was that Katalyst "determined it was better to wait and see whether or not the wire transfer promised on March 23 . . . included fees and costs, and whether further application would be necessary." (Oppenheim Decl. ¶ 13.) As Marker correctly notes, ongoing attempts to resolve fee disputes outside of Court "[do] not relieve [a party] of [its] obligation to comply with clear procedural rules." Marchisotto v. City of New York, No. 05-CV-2699-RLE, 2009 WL 2229695, at *2 (S.D.N.Y. Jul. 27, 2009). However, as noted in Marchisotto and elsewhere, this factor alone is not dispositive. Id. at *4 (emphasizing that counsel's delay of "well over a year" prejudiced non-movants by preventing it from making any argument about attorneys' fees in its appeal). Finally, the Court notes that Marker has not proffered any basis for a finding that Katalyst has not acted in good faith.

Considering the four factors, the Court finds Katalyst's two-day delay to be the result of excusable neglect. Marker claims no prejudice from the delay, which left ample time for Marker to make an informed choice regarding an appeal. That Marker had long known of Katalyst's intent to request attorneys' fees and costs further supports Katalyst's position. Marker's request that the Court deny Katalyst's request as untimely is therefore denied.

Contractual Authorization to Award Attorneys' Fees

"In federal practice the general rule—known as the 'American Rule'—is that each party bears its own attorneys' fees." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1312-13 (2d Cir. 1993) (collecting cases). However, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract

is valid under applicable state law." Id. at 1313. "Although New York follows the American Rule, it permits parties to recover attorney's fees in a contract if the intention to provide for such fees 'is unmistakably clear from the language of the [contract].'" Gupta v. Headstrong, Inc., No. 20-3657, 2021 WL 4851396, at *2 (2d Cir. Oct. 19, 2021) (summary order) (quoting Hooper Assocs, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (1989)). "New York courts have awarded attorney's fees for confirmation proceedings, in addition to underlying arbitration proceedings, where the fee-shifting agreement between the parties so permits." Coscarelli v. ESquared Hospitality LLC, No. 18-CV-5943-JMF, 2021 WL 293163, at *9 (S.D.N.Y. Jan. 28, 2021).

Neither party disputes the validity of the Agreement, the fee-shifting provision of which reads as follows:

> THE PARTIES AGREE THAT THE DETERMINATION OF THE ARBITRATORS SHALL BE BINDING AND CONCLUSIVE UPON THEM. THE PREVAILING PARTY, AS DETERMINED BY SUCH ARBITRATORS, IN A LEGAL PROCEEDING SHALL BE ENTITLED TO COLLECT ANY COSTS, DISBURSEMENTS AND REASONABLE ATTORNEY'S FEES FROM THE OTHER PARTY.

(Agreement at 21-22.)

Marker argues that "although the parties' agreement provides for attorney[s'] fees in connection with the arbitration . . . it does not provide for attorneys' fees in connection with any post-arbitration proceedings." (Docket entry no. 25 ("Resp. Mem.") at 7.) Instead, Marker contends that the Agreement "conditions fees on the arbitrators' determination, in arbitration." Id. Katalyst, on the other hand, reads the Agreement as permitting "the prevailing party . . . to

collect **any** costs, disbursements, and reasonable attorneys' fees" stemming from litigation pertaining to arbitration. (Docket entry no. 26 ("Pet. Mem.") at 6) (emphasis in original).[2]

In construing the terms of a contract, it is well settled that a Court should prefer "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms." Restatement (Second) of Contracts § 203. Pursuant to this principle, "we must avoid an interpretation of an agreement that renders one of its provisions superfluous." Kelly v. Honeywell International, Inc., 933 F.3d 173, 183 (2d Cir. 2019) (citation and alterations omitted). Here, Marker's proposed interpretation would render the phrase "in a legal proceeding" surplusage. Without this phrase, the clause would read, "[t]he parties agree that the determination of the arbitrators shall be binding and conclusive upon them. The prevailing party, as determined by such arbitrators, shall be entitled to collect any . . . reasonable attorney's fees from the other party." Marker's interpretation, which accepts the clause as authorizing the award of attorney's fees arising within the arbitration, would deny any significance to the phrase "in a legal proceeding." "Such an interpretation runs afoul of traditional contract principles." Kelly,

---

2 In its reply, Katalyst also raises a new argument, that the Agreement obliges Marker to pay "all reasonable attorneys' fees, including appeals . . . resulting of the breach of any representation, warranty or covenant made by [Marker] or the failure of [Marker] to perform its obligations under the Agreement." (Docket entry no. 26 ("Reply") at 6 (quoting Agreement at 17-18).) As Marker correctly notes in its sur-reply, this provision, included under the header "Indemnification," entitles Katalyst to indemnify Marker for any claims made against Katalyst in certain circumstances described in the relevant contractual provision. (Docket entry no. 27 ("Sur-Reply") at 3.) Katalyst's argument fails because this case does not arise from attempts by Katalyst to indemnify Marker against losses incurred from litigation brought by a third party. As this argument involved a discrete legal issue raised for the first time on reply, Marker's submission of a sur-reply for the narrow purpose of rebutting this argument was appropriate. The Court therefore grants retroactively Marker's request for leave to file the Sur-Reply. See Securities and Exchange Commission v. Ripple Labs, Inc., No. 20-CV-10832-AT, 2022 WL 329211, at *3 (S.D.N.Y. Feb. 3, 2022) ("Courts grant leave to file sur-replies when they address arguments raised for the first time in a reply brief.") (citation omitted).

933 F.3d at 183. The Court therefore finds that the only plausible interpretation of the clause is one that gives meaning to each of its terms, and that "legal proceeding," a phrase that on its face refers to something other than an arbitration proceeding, is best understood to refer to post-arbitration litigation. See Sinnet v. Friendly Ice Cream Corp., 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004) (noting that the Federal Arbitration Act "provides for a stay of *legal proceedings* when the court is satisfied that the issue is arbitrable under an arbitration agreement") (emphasis added). As the Agreement thus expressly provides for an award of attorneys' fees incurred by the prevailing arbitral party, in either arbitration or subsequent court proceedings, Katalyst is entitled to an award of attorneys' fees in connection with post-arbitration litigation in this Court. See Matter of New York Merchants Protective Co., Inc. v. RW Adart Poly, LLC, 108 A.D.3d 554, 557 (2d. Dept 2013) (reversing lower court's denial of attorney's fees where the parties' agreement "expressly provide[s] for an award of an attorney's fee incurred in either arbitration proceedings or court proceedings").

Reasonableness

In calculating a reasonable fee award, courts typically calculate the "lodestar figure," which represents the presumptively reasonable fee amount. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-53 (2010). A presumptively reasonable fee is computed by "multiplying a reasonable hourly rate by the number of reasonably expended hours." Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Center, 652 F.3d 277, 289 (2d Cir. 2011). The party seeking an award of attorneys' fees "bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (citation and quotation

marks omitted).  Here, Katalyst requests $625 to $775 per hour for work done by partners, $325 to $395 per hour for work done by associates, and $125 to $145 per hour for work done by paralegals.  (Pet. Mem. at 2.)  The Court finds that these hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); see LCS Group LLC v. Shire LLC, et al., 383 F. Supp. 3d 274, 279 (S.D.N.Y. 2019) (finding rates of $868 per hour for a partner and $449.50 per hour for an associate to be reasonable); MSC Mediterranean Shipping Co. Holding S.A. V. Forsyth Kownacki LLC, No. 16-CV-8103-LGS, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (approving as reasonable hourly rates of $210.75 to $437.30 for non-legal staff, $569.02 to $753.42 for associates, and $874.60 to $1,048 for partners).

       Marker does not challenge the hourly rates charged by Katalyst's counsel, but argues that $18,532.50 of the fees should not be awarded, because they pertain to the post-judgment restraining notices and discovery demands issued by Katalyst.  Marker maintains that this work was unnecessary, and that the hours therefore were not reasonably expended.  (See Resp. Mem. at 10) ("If Katalyst had contacted Marker before serving these restraints and discovery, it would have learned that Marker was working to convene its board to approve payment, and then to make prompt payment.").

       The Court must "exclude hours that were not reasonably expended."  HRB Professional Resources LLC v. Bello, No. 17-CV-7443-KMK, 2018 WL 4629124, at *9 (S.D.N.Y. Sept. 27, 2018) (quoting Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994)).  However, in evaluating reasonableness, the Court's "[i]nquiry is not based on what effort appears necessary in hindsight," but whether "a reasonable attorney . . . would have engaged in similar

time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). The Court "should evaluate whether the prevailing party's counsel exercised 'billing judgment,' that is, whether the prevailing party's counsel acted 'as he [or she] would under the ethical and market restraints that constrain a private sector attorney's behavior in billing his [or her] own clients.'" Bello, 2018 WL 4629124, at *9 (quoting Lunday, 42 F.3d at 133).

The Court finds that Katalyst's post-judgment actions were reasonable. Following the entry of judgment by the Court on March 9, Katalyst did not receive any correspondence from Marker for a full week. Only then did Katalyst submit its post-judgment discovery demands and restraining notices, which Katalyst has demonstrated were permissible actions to be taken by a judgment creditor under New York law. See N.Y. C.P.L.R. 5222 (attorney for judgment creditor may issue restraining notices), 5223 (judgment creditor may compel disclosure of matter relevant to satisfaction of judgment), 5225A(3) (judgment creditor may issue subpoenas). Records submitted by Katalyst indicate that counsel expended approximately 35.25 hours in connection with post-judgment litigation. (Oppenheim Decl. at Ex. 7). The modesty of the additional expenditure ($18,532.50) in comparison to the size of the award (over 2.5 million dollars) further supports a finding that such expenditures represent the reasonable exercise of billing judgment.[3] The Court therefore finds Katalyst's total award request, of $114,093.75 in attorneys' fees and costs, to be reasonable and appropriately compensable.

[3] The Court similarly finds Katalyst's total expenditure of hours, 245, to be reasonable. Katalyst's documentation of how it spent these hours is detailed and extensive (Oppenheim Decl. at Ex. 7), and Marker does not otherwise challenge this figure.

CONCLUSION

For the foregoing reasons, Katalyst's motion for attorneys' fees is granted. Katalyst is awarded attorneys' fees and costs in the amount of $114,093.75. Marker's request to file a sur-reply is also granted nunc pro tunc. This Memorandum Order resolves docket entry nos. 20 and 27.

SO ORDERED.

Dated: January 3, 2023
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge